Curia, per
Nott, J.
I concur in-opinion in this case with the chancellor, on the first and second grounds, for the reasons given in the *431 decree. I would only remark with regard to the second, that it was not the affidavit alone of the former commissioner which was received, but he was called himself as a witness.
The third ground, however, appears to be the most important in the case. It has been long settled, that an auctioneer is the agent of both parties; and therefore, the entry of a sale made and signed bv him is a sufficient signing to satisfy the statute. Simon v. Motivos, 3 Burr. 1921. Hind v. Whitehouse, 7 East, 558. It appears that the decisions in England have gone further. It has been decided that a sale by the Master is a judicial sale, and that the confirmation of the report takes it out of the statute. Att. General v. Day, 1 Ves. 218. And the chancellor, in this case, appears to have been of that opinion. It is not necessary, however, to decide that question; for the entry of the sale was made and signed by the commissioner by whom the sale was effected. But there are two objections to this entry.
1. That it was made on a loose piece of paper, and not in a book kept by the commissioner for that purpose.
2. That this was a sale of land, and therefore, not embraced by the principles of the decisions above alluded to.
With respect to the first, it appears that the commissioner was not in the habit of keeping a book at that time in which the entry of sales made by him were kept. His practice was to enter them on loose pieces of paper, which were afterwards filed in his office. It was certainly a very careless and reprehensible practice, but cannot affect this question. This case must be decided on the ground of contract. And therefore, if sufficiently reduced to writing, and signed by the party or his agent, it cannot be material whether the entry constituting the evidence of it was made in a book or on a sheet of paper.
The second question appears to be well settled by the modern decisions. For although it seemed at one time to be thought, that there was a distinction in that respect between a sale at auction of goods and lands, the distinction is without any foundation. The words of the statute are, “no action shall be brought to charge any *person on any contract or sale of land, &c, unless the agreement, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized.”
If therefore the auctioneer is the legally authorized agent of the party, signing by him is a fulfilment of the provisions of the statute. And that question being settled, the decisions apply as well to the sale of lands as goods. Emerson v. Heelis, 2 Taunt. 47. White v. Proctor, 4 Taunt. 208. Coles v. Trecothick, 9 Ves. 234. 1 Smith, 251. M’Comb v. Wright, 4 Johns. Cha. Rep. 665, and the cases there referred to.
I had at first some doubt on the fourth ground. But the chancellor, who has had great experience in the equity practice, and whose opinion therefore is entitled to great weight, does not appear to entertain any doubt on that question. And upon looking into the books I think he is well supported in the opinion which he has expressed. In the case of Cunningham v. Williams, 2 Anstr. Rep. 344, it is said, “A. B. was reported by the master the highest bidder on a sale before *432 him of property in a cause. Having neglected to complete his purchase, it was moved by Burton and Cooke, last term, to confirm the master’s report, in order to compel him to complete the purchase. The court hesitating as to the practice, the matter stood over to this day, when Cooke stated two cases, Barker v. Holford, July 1793, and Egginton v. Flavel, November 1787, in chancery, where biddings were compelled to be completed; and that the practice in chancery is to confirm the report, and then, if the purchaser is supposed to be responsible, to get an order to inquire whether the party can make out a good title; and if he can, to obtain an order on the purchaser to complete the purchase. But if the purchaser is unable to complete ^ Purcbase, then on *the report being confirmed, it is moved to discharge him from the biddings. Ordered nisi, and no cause being shown, this was afterwards made absolute.” I have transcribed the whole case; because Anstruther’s Reports is a book with which the profession generally in this State is not very familiar; and because it is a leading case on the subject, and seems to have furnished a rule for the government of the courts of equity in England ever since. Child v. Lord Abingdon, 1 Ves. Jun. 94. 2 Ves. Jun. 335. In the case of Landsdown v. Elderton, 14 Yes. 512, Lord Eldon ordered the purchaser to pay the money in a fortnight, or to stand committed. And in New York, in a case not unlike the one now under consideration in its circumstances, Chancellor Kent ordered the purchaser to pay the money in six days, or that an attachment issue. Executors of Brasher v. Cortlandt, 2 Johns. Cha. Rep. 506. I also concur with the chancellor, that this course derives support from the circumstance that the purchaser is one of the parties to the suit before the court, and therefore more immediately under its authority. There may be cases where it would be more proper to proceed by bill than in this summary way; but that will always be within the discretion of the court. But 1 do not see anything in this case that made it the duty of the chancellor to direct that course to be taken.
The fifth furnishes no cause for the interposition of this court. It is the duty of the parties to be prepared for trial when required : and if, after using due diligence, their witnesses do not attend, they may obtain further time. But that is a question for the court below, and not for this court.
Whether Colonel Maybin’s letter ought to have been received as evidence or not, is a question of no importance. For although the chancellor rejected it as such, yet it was allowed all the effect which it could have had *if admitted. And the decision turned on other grounds which could not have been changed by the contents of that letter. For whatever agreement may have been made between some of the parties, it could not affect the rights of those who were not parties to that agreement.
The seventh ground does not appear to have been made in the court below, and therefore cannot be heard here. The party might have had the question referred to the master, to ascertain whether a good title could be made, and may perhaps do it still. But that is a question for the chancellor, and not for this court. I do not mean to say that this court will, in no case, order such an inquiry to be made, *433 when it has not been moved before the chancellor. Possibly such a case may occur; but it is not a motion of course; and I see nothing in the circumstances of this case which seem to require it.
The last ground was also a matter within the discretion of the chancellor. The defendant is still at liberty to make what terms he pleases with the other parties interested. But without their consent the decree of the court must be carried into effect.
The decree must therefore be affirmed.

Decree, affirmed.